**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMON JEREZ,<br><br>    Claimant,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Civil Action No.: 2:13-cv-04025 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I. INTRODUCTION

Ramon Jerez ("Claimant") seeks review of the final determination by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), which denied Claimant disability benefits under the Social Security Act ("SSA") for the period preceding October 6, 2009. The decision by the Administrative Law Judge ("ALJ") determined that Claimant became disabled on October 6, 2009 and denied Claimant disability benefits before that date. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the ALJ's decision is affirmed.

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## II.   FACTS AND PROCEDURAL HISTORY

Claimant is 50 years old (R: 6).[2] He was born in the Dominican Republic in December 1964, where he attended school through the 7th grade, and moved to the United States as an adult (R: 43-44, 60). Claimant cannot communicate in English (R: 43-44). His previous work experience includes packing, shipping, and receiving goods at factories and warehouses (R: 114). His disability claim arises from a back injury sustained while working at a warehouse on December 30, 2005 (R: 45, 102, 106), for which he underwent a lumbar microdiscectomy surgery in April 2006 (R: 224).[3]

On October 11, 2007, Claimant applied for disability insurance benefits under Title II ("DIB") and supplemental security income under Title XVI ("SSI") (collectively, "benefits") from the Social Security Administration (R: 102-08), alleging disability that began on December 30, 2005 (R: 102, 106). His claims were denied initially and upon reconsideration (R: 60-61, 62-63). Claimant requested a hearing before an ALJ (R: 79-80), which was held before ALJ Richard West on October 6, 2009 (R: 31-58).

In a partially favorable written opinion, the ALJ found that Claimant has the residual functional capacity to perform certain sedentary work and became disabled on October 6, 2009, when he turned 45 years old, but that Claimant was not disabled before that date (R: 25-30). The Appeals Council denied review on December 14, 2010, rendering the ALJ's decision the final judgment of the Commissioner (R: 1-8). Claimant commenced an action in the District Court, and the District Court executed the Commissioner's proffered Consent Order to Remand (R: 446-47). On May 17, 2012, the Appeals Council vacated the final decision of the Commissioner of Social

---

[2] "R" refers to the certified record of the administrative proceedings.
[3] Further facts and an analysis of Claimant's medical history will be adduced below.

2

Security and remanded the case to the ALJ (R: 448-54), requiring the ALJ to: 1) give further consideration to Claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of the record in support of the assessed limitations; 2) further evaluate Claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms; and 3) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Claimant's occupational base prior to October 6, 2009—the date that Claimant's age category changed from that of "younger individual age 18-44" to "younger individual age 45-49" (R: 453).[4]

Claimant's age was significant because, according to the Medical-Vocational Rules 201.17 and 201.23, an illiterate, unskilled person capable of only sedentary work is not disabled if between the ages of 18-44 but becomes disabled if between the ages of 45-49:

Grid Rules for Sedentary Work

| Rule | Age | Education | Previous Work Experience | Decision |
|---|---|---|---|---|
| 201.23 | Younger individual age 18-44 | Illiterate or unable to communicate in English | Unskilled or none | Not disabled |
| 201.17 | Younger individual age 45-49 | Illiterate or unable to communicate in English | Unskilled or none | Disabled |

ALJ West held a second hearing in this matter in October 2012 (R: 508-573) and later issued a second partially favorable written opinion, again finding that Claimant was not disabled prior to October 6, 2009, but became disabled on October 6, 2009 and continued to be disabled through the date of the decision (R: 403-16). On January 11, 2013, Claimant appealed the ALJ's

---

[4] The ALJ applied Claimant's age "non-mechanically" so as to advance his 45th birthday to the date of the hearing, October 6, 2009, rather than making Claimant wait until his actual 45th birthday on December 22, 2009, for purposes of this decision (R: 28).

3

decision to the Appeals Council (R: 389-92). The Appeals Council affirmed the ALJ's decision on April 24, 2013 (R: 379-82). Claimant's current action is timely.

## III. LEGAL STANDARDS

### A. Standard of Review

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F.App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a claimant must show that he is

4

disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has a severe impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical

evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

## IV.  DISCUSSION

Claimant raises two objections to the ALJ's decision, which found that Claimant was not disabled before his 45th birthday. First, he argues that the RFC is not supported by substantial evidence in the record. See Claimant's Br. at 11-34. Second, he argues that the Commissioner failed to carry her burden at step five of the sequential analysis. See Claimant's Br. at 34-35. The Court addresses each argument in turn.

### A.  The ALJ's RFC Determination Is Supported By Substantial Evidence

Claimant argues that the ALJ's determination that he was not disabled prior to October 6, 2009—the date of his 45th birthday—is not supported by substantial evidence, because the RFC determination that Claimant was capable of some sedentary work was 1) contradicted by two of his treating physicians' opinions and 2) overlooked his complaints of pain and other symptoms.

While an ALJ is not required to use any particular language or format in conducting his analysis, there should be "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004). As discussed below, the ALJ did review the relevant medical evidence and the supported complaints and symptoms. Accordingly, the RFC determination was supported by substantial evidence.

### 1. The ALJ Gave Proper Weight To The Medical Opinions

In his decision, the ALJ determined that Claimant had the RFC to perform sedentary work excluding work that involves climbing of ladders, ropes, or scaffolds, and occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs (R: 406). The ALJ explained that his RFC assessment was "supported by the treating orthopedic surgeon's opinion that the claimant was at least capable of sedentary work" and the consultative examining physician's findings that Claimant's lumbar motion was only moderately limited, with no limitations in his cervical spine or upper and lower extremities (R: 408). Also, in apparent response to the remand order—requiring him to provide additional rationale with specific references to the record to further explain Claimant's RFC (R: 448-54)—the ALJ noted the absence of medical evidence showing Claimant's inability to perform any physical functions and the relatively mild course of treatment, including taking over-the-counter anti-inflammatory medications such as "Advil" rather than being prescribed "potent . . . narcotic-opioid analgesic medications," even before Claimant's insurance benefits were terminated (R: 408-09). Thus, to the extent that Claimant testified at the supplemental hearing that he was unable to work in a sedentary position for an 8-hour workday, the ALJ found this characterization to be "not entirely credible" as it was inconsistent with "the clinical signs, physical findings and opinions in the medical evidence" (R: 408)—specifically, those of treating orthopedic surgeon, Dr. Lombardi, and consulting

orthopedist, Dr. Weber (R: 408). The ALJ also considered Claimant's own statements about his independence in his daily living activities (R: 408).

Claimant began receiving treatment from Dr. Lombardi, an orthopedic surgeon, in March 2006 (R: 219). During his initial evaluation, Claimant characterized his pain as a "10 out of 10, with 10 being the most severe" (R: 219). An MRI of Claimant's lower back revealed a disc bulge with possible small central herniation at L5-S1 (R: 220, 346). Dr. Lombardi's physical examination revealed no abnormalities in Claimant's gait and station and moderate limitations in Claimant's lower back range of motion (R: 219-20). Dr. Lombardi recommended an epidural injection but Claimant "wants the problem fixed and wished to have surgery" (R: 220). A few weeks after undergoing surgery, Claimant reported to Dr. Lombardi that his symptoms had slightly improved (R: 227). Claimant received physical therapy treatments, and his physical therapist noted that he showed significant improvement in his lumbar spine's range of motion, lower extremity strength, and gait and posture (R: 234-37). The physical therapist also noted that although Claimant reported no change in pain symptoms, clinically, he was able do a lot more without complaints of pain (Id.). The ALJ noted that Claimant did not receive any further medical treatment for approximately two years post-surgery (R: 408), at which point he visited Drs. Bercosme and Arjona.

While Claimant argues that the ALJ should have given more weight to the opinions of his latter treating physicians—Drs. Bencosme and Arjona—the ALJ found that those opinions were "not substantiated by the medical evidence of record" (R: 409). An ALJ must give a treating physician's opinion controlling weight when the opinion is 1) "well supported by medically acceptable clinical and laboratory diagnostic techniques" and 2) "is not inconsistent with the other substantial evidence in [the claimant's] case record." Johnson v. Comm'r Soc. Sec., 529

8

F.3d 198, 202 (3d Cir. 2008) (quoting 20 C.F.R. § 404.1527); see also 20 C.F.R. § 416.927 (stating the same legal standard).

Here, Dr. Bencosme began treating Claimant for a new onset of non-insulin dependent diabetes mellitus (R: 218). Although Dr. Bencosme's treatment focused on Claimant's diabetes, Dr. Bencosme opined in his November 2007 medical report that Claimant is capable of only a severely restricted range of sedentary work (R: 409). The ALJ accorded "little weight" to Dr. Bencosme's opinion, because this opinion was not supported by his other findings—namely that Claimant had only slightly elevated blood pressure and an elevated glucose level (R: 409). Nor did Dr. Bencosme perform "objective or range of motion testing" to support his conclusion that Claimant is capable of only severely restricted sedentary work (R: 409).

Moreover, Dr. Bencosme's opinion was contradicted by Claimant's own self-reporting (R: 408). Although Dr. Bencosme stated that Claimant could lift no more than 5 pounds (R: 318-20), a month later, Claimant stated in a function report that he was able to lift 10 pounds frequently and 20 pounds occasionally (R: 127). Claimant also self-reported that he was able to prepare his own meals, drive a car, and go food shopping six to seven days a week (R: 122-25, 408). An ALJ may consider whether a claimant's daily activities contradict a treating physician's opinion. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); see also Russo v. Astrue, 421 F. App'x 184, 191 (3d Cir. 2011) (finding appropriate the ALJ's decision not to apply controlling weight to treating physician's opinion where the opinion was inconsistent with the claimant's reported daily activities). Here, Dr. Bencosme's functional limitation opinion was contradicted by Claimant's own admitted degree of participation in daily activities during the same period when he was being treated by Drs. Bencosme and Arjona.

Accordingly, the ALJ's decision to give less weight to Dr. Bencosme's opinion was proper,

as his opinion was neither supported by medically acceptable clinical and laboratory diagnostic techniques and nor was it consistent with the other substantial evidence in Claimant's case record, including his own self-reporting.

Similarly, the ALJ also gave less weight to Dr. Arjona's opinion. Dr. Arjona opined that Claimant is permanently disabled (R: 378), despite only having examined Claimant on two occasions (R: 153-54, 375-78, 409). In December 2008, Claimant visited Dr. Arjona complaining of back pain (R: 377). Dr. Arjona noted that Claimant was experiencing chronic pain of at least moderate intensity and that the pain had become severe in recent weeks (R: 377). Dr. Arjona prescribed Vicodin to Claimant, twice daily as needed. (R: 377). Claimant next visited Dr. Arjona in September 2009 (R: 375). In his notes, Dr. Arjona reported that Claimant suffered from moderate to severe pain on a daily basis, and that his pain was aggravated by standing for more than 10 minutes, lifting, bending and sitting down for more than 10 minutes (R: 375). He also noted that Claimant's pain was alleviated by lying down on a firm surface and temporarily relieved with over the counter pain medication (Id.). Significantly, in that same report, Dr. Arjona stated that Claimant was "permanently disabled" (R: 378).

Shortly after Claimant's first visit to Dr. Arjona, Claimant was evaluated by Dr. Weber, a consultative orthopedist (R: 350-54), who found that Claimant's range of motion in his neck and both extremities was within normal limits and his lumbar spine range of motion showed only moderate limitations (R: 352). Claimant's straight leg raise was negative bilaterally in the seated position (Id.). Claimant's muscle strength was 5/5 in both lower and upper extremities, including his grip strength and pinch strength (Id.). Dr. Weber also indicated that Claimant was able to ascend and descend the examination table, and remove and put on his shoes independently (Id.).

On April 6, 2008, state agency medical consultant, Dr. Park, conducted a physical residual

capacity assessment (R: 355-62). Dr. Park indicated that Claimant was able to occasionally carry 20 pounds and frequently carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit with normal breaks for a total of about 6 hours in an 8-hour workday (R: 356). Dr. Park further indicated that Claimant had no limits in his pushing and pulling abilities and that Claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds (R: 357.)

Accordingly, the ALJ properly discredited Dr. Arjona's opinion that Claimant was permanently disabled (R: 409), given the findings of several doctors to the contrary, and, again, Claimant's contradictory self-reporting. In any event, the determination of whether a claimant meets the statutory definition of disability is an issue reserved to the Commissioner. See 20 CFR §§ 404.1527(d)(1), 416.927(d)(1). Thus, it was proper for the ALJ to discount Dr. Arjona's blanket opinion that Claimant is "permanently disabled."

### 2. The ALJ Properly Considered Plaintiff's Complaints Of Pain

Next, Claimant argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly consider all of Claimant's complaints of pain and other subjective symptoms. See Claimant's Br. at 17-18. "Allegations of pain and other subjective symptoms must be supported by objective medical evidence. See 20 C.F.R. § 404.1529. Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d at 362 (3d Cir. 1999). Such an inquiry necessarily requires that the ALJ determine "the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. § 404.1529(c)." Id. In making such credibility determinations, the ALJ is given great

discretion, and his findings are entitled to judicial deference. See generally Holley v. Comm'r of Soc. Sec., 590 F. App'x 167, 169 (3d Cir. 2014) (noting that ALJ's credibility determinations regarding claimant's statements are entitled to deference); see also Metz v. Fed. Mine Safety & Health Review Comm'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference.").

Here, the ALJ found that while Claimant's medically determinable impairment of degenerative disc disease could be expected to cause his alleged symptoms (R: 408), his "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not credible to the extent that they [were] inconsistent with the residual capacity assessment" (Id.). Specifically, the ALJ found that Claimant's testimony that he was unable to work in a sedentary position for an 8-hour workday was not entirely credible (Id.). Although the ALJ noted that "[i]f the claimant is sitting for long periods of time that seems to aggravate his pain," the ALJ further explained that "the medical record does not support a conclusion that he is incapable of doing so." (R: 409).

The ALJ also explained how Claimant's testimony was inconsistent with the clinical signs, physical findings, Claimant's own reported daily activities, and Claimant's history of medical treatment and medication (Id.). Specifically, he noted that the limitations as reported by Claimant were inconsistent with the medical evidence provided by Dr. Lombardi on August 23, 2006 and Dr. Weber on March 6, 2008 (R: 408 (citing R: 216-317, 350-54)). In his analysis, the ALJ also referred to Claimant's reported daily activities, which included driving and shopping, and Dr. Weber's finding that Claimant was independent in his activities of daily living (R: 408 (citing R: 122-29, 350-54)). The ALJ noted that Claimant testified at the first hearing that while he saw Dr.

Lombardi three times in the few months following his April 2006 surgery, he then did not seek medical treatment again until seeing Dr. Arjona in December 2008 (R: 408 (citing R: 48-49). Last, looking at the type and dosage of medication used by Claimant for pain relief, the ALJ noted that Claimant testified that Advil was the only medication he was using for pain between his last visit to Dr. Lombardi in August 2006 and his visit to Dr. Arjona in December 2008 (R: 408 (citing R: 55)).

Claimant also argues that the ALJ failed to include the limitation that he requires a cane for walking. See Claimant's Br. 22-23, 31. However, in order "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. Claimant provided no medical documentation in support of this allegation. First, there is no evidence demonstrating that the cane was prescribed. There was no mention of Claimant's medical need for a cane in either Dr. Bencosme's or Dr. Arjona's medical reports (R: 318-49, 374-78). Second, although Claimant's physical therapist noted that he was using a cane in 2006 and although Claimant self-reported using a cane for walking in 2007, he also admitted that the cane was not prescribed by a doctor (R: 128, 237).

Accordingly, the ALJ properly compared the Claimant's subjective complaints against the evidentiary record and comported with the applicable standards in determining the credibility of Claimant's statements as to his symptoms and pain.

### B. The Hypothetical Considered by the ALJ Accurately Reflected Claimant's Impairments

Claimant argues that the Commissioner did not carry her burden of proof at step five of the sequential analysis. He argues that the ALJ's decision failed to consider the more restricting hypotheticals posed to the vocational expert ("VE") by the ALJ and Claimant's counsel. See

Claimant's Br. at 34.

The hypothetical questions that the ALJ poses must "accurately convey to the vocational expert all of a claimant's credibly established limitations." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ's hypothetical questions "must reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). If the hypothetical question does not include "medically undisputed evidence of specific impairments" in the record, then "the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). An ALJ is not required, however, "to submit to the vocational expert every impairment *alleged* by a claimant." Rutherford, 399 F.3d at 554 (emphasis in original).

Here, the ALJ's first hypothetical asked the VE to assume an individual who is unable to communicate in English and who is limited to sedentary exertional work, except the individual cannot climb ropes, ladders, or scaffolds at all and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl (R: 552). The VE responded that given those limitations, such an individual could work as a final assembler, table worker, or patcher (R: 554).

If an ALJ poses a hypothetical to a VE that "fairly set[s] forth every credible limitation [of the claimant] established by the physical evidence," the VE's testimony as to the jobs such a person could perform is by itself substantial evidence to carry the government's burden at step five. Plummer v. Apfel, 186 F.3d 422, 431-32 (3d Cir. 1999). The ALJ's hypothetical accurately conveyed the ALJ's RFC determination, which as the Court discusses above, was supported by substantial evidence. Therefore, the VE's testimony regarding other work provided substantial evidence for the ALJ's conclusion.

14

## V.     CONCLUSION

For the foregoing reasons, the ALJ's decision that Claimant was not disabled within the meaning of the Social Security Act for the period of December 30, 2005 through October 5, 2009 is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: September 25, 2015

_____
CLAIRE C. CECCHI, U.S.D.J.